UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340



**WILLIAM J. MARTINI**
     **JUDGE**

## LETTER OPINION

November 16, 2010

William L. Gold
Bendit Weinstock, P.A.
80 Main Street
West Orange, NJ 07052
    *(Attorneys for Plaintiffs)*

David W. Field
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ 07068
    *(Attorneys for Defendant)*

    Re:    *Smith et al. v. Scientific Games Corporation*
             Civil Action No. 08-5591

Dear Litigants:

    This matter comes before the Court on the motion for summary judgment filed by Defendant Scientific Games Corporation ("Scientific Games") seeking dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 56.  Oral arguments were not held.  Fed. R. Civ. P. 78.  For the reasons set forth below, Defendant's motion for summary judgment is **GRANTED** and the Amended Complaint is **DISMISSED with prejudice**.

## I.    BACKGROUND

    Plaintiffs are current and former employees of the New Jersey Sports & Exposition Authority ("NJSEA"), which operates the Meadowlands and Monmouth

1

Racetracks in New Jersey. (Amended Complaint, hereinafter "Am. Cmplt.," ¶ 1; Defendant's Motion for Summary Judgment, hereinafter "Def. Br.," at 1).[1] Most have worked as tellers for the NJSEA since the mid-1970s when the Meadowlands first opened. (Def. Br. at 3). In 2006, the NJSEA issued a Request for Proposal ("RFP"), soliciting bids from makers of betting equipment for the manufacture and supply of new betting equipment to be installed at the teller windows of these racetracks. (*Id*. at 3). The RFP included the following statement regarding workplace injuries: "NJSEA is concerned with repetitive motion injuries, carpal tunnel syndrome and other work related injuries. All manned terminals should have adjustable keyboards, displays and have been certified by 'UL' as to the equipment's electrical and fire safety." (Affidavit of David Haslett, hereinafter "Haslett Aff.." Ex. A). The RFP did not include any size limitations or provide a space description of the area in which the NJSEA intended to install the equipment. (Def. Br. at 3). The NJSEA also established an evaluation team (the "Evaluation Team") to review the proposals that came in. (*Id*. at 4). All members of the Evaluation team were NJSEA employees. (*Id*.).

Defendant had been the previous supplier of betting equipment to the NJSEA. (*Id*. at 3). In 2006, Defendant responded to the RFP by submitting a proposal that offered to supply the NJSEA with a newer model of betting equipment known as the BetJet (the "BetJet"). (*Id*.). The proposal specified the exact size and dimensions of a BetJet unit. (*Id*.). Defendant also presented an actual BetJet model to the Evaluation Team and demonstrated its operation to NJSEA employees. (*Id*. at 4). The Evaluation Team did not inquire about the installation of the BetJets, or notify Defendant that the BetJet was the improper size or shape for operation in the teller windows or that it appeared to present any sort of ergonomic problems. (*Id*.).

After the demonstration, Defendant was awarded the contract to supply the new betting equipment for the Meadowlands and Monmouth Racetracks. (*Id*.). The contract incorporated the terms of the RFP. (Haslett Aff., Ex. C at 22). In 2007, Defendant delivered several hundred BetJet units to the racetracks for installation in the teller windows. (Def. Br. at 5). Defendant also provided the NJSEA with metal brackets, packaged separately from the units themselves, that could be used to affix the BetJets to any wall or surface within the teller windows. (*Id*.. at 4). Defendant maintains use of the brackets was optional; Plaintiffs argue it was not. (*Id*.; Plaintiffs' Opposition Brief, hereinafter "Pl. Opp. Br.," at 5). Either way, the NJSEA was entirely responsible for the design, construction, operation, and maintenance of the teller windows themselves, and NJSEA in-house carpenters and electricians performed this work. (Def. Br. at 4-5). It appears that NJSEA carpenters also installed at least some of the brackets into the teller windows; however, some may have been installed by Defendant.

Once the windows were prepared with the brackets, Defendant's technicians tested each BetJet unit for operability. (*Id*. at 5). After initial operability was confirmed, each unit was brought to a teller window, placed on the bracket installed by the NJSEA, and re-tested by Defendant to confirm operability. (*Id*.). Defendant maintains that its sole

---

[1] Plaintiffs accept the statement of the procedural history as set out by Defendant and, with certain limitations, the statement of facts as well.

responsibility was to make sure the BetJets were operable; however Plaintiffs argue that Defendant was also responsible for making sure the workstations were ergonomically sound. (Def. Br. at 5; Pl. Opp. Br. at 10).

Shortly after the BetJets were installed, NJSEA tellers began complaining and expressing their dislike for the new equipment. (Def. Br. at 7). Defendant implies that the employees were primarily dissatisfied with the BetJet machines because the technology was complicated to use, causing mistakes to be made which were deducted from the tellers' wages. Defendant also suggests that the employees were encouraged by their union to state that the units were causing physical injuries. (*Id.* at 8).

In May 2009, Plaintiffs filed an Amended Complaint against Defendant. The Amended Complaint contains the following claims: (1) negligent design, manufacture, distribution, sale, and installation of the BetJet units (Count One); (2) defective design or manufacture of the BetJet units in violation of the 1987 New Jersey Product Liability Act (the "product liability claims") (Count Two); and (3) per quod loss of consortium claims suffered by Plaintiffs' spouses (Count Three). (Am. Cmplt. Count 1, ¶ 3; Count 2, ¶ 3, Count 3, ¶ 3).

Presently before the Court is Defendant's motion for summary judgment seeking dismissal of the entire Amended Complaint. Plaintiffs now concede that the claims for negligent design, manufacture, distribution, and sale of a product asserted in Count One are not cognizable under New Jersey law, and that they are unable to establish any design or manufacturing defects as asserted in Count Two. (Pl. Opp. Br. at 1). Additionally, Plaintiffs admit that if the underlying claims are dismissed, the per quod claims automatically fail. (*Id.*). Therefore, the central issue before the Court is whether or not Plaintiffs' claim for negligent installation can survive a motion for summary judgment.

## II. ANALYSIS
### A. Standard of Review

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *See Celotex Corp.*, 477 U.S. at 323. A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are

material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

### B.     Plaintiff's Negligent Installation Claim

The gravamen of Plaintiffs' claim is that the BetJet units were installed into the teller booths negligently, requiring the tellers to stretch unnecessarily to place orders and reach the money drawers, and causing them to sustain repetitive stress injuries. (Am. Cmplt. Count 1, ¶¶ 3-4; Pl. Opp. Br. at 6, 10-12; Def. Br. at 18, 20). In order to satisfy a claim for negligent installation, Plaintiffs must demonstrate (1) a duty owed by Defendant to Plaintiffs; (2) breach of that duty; (3) injury caused by the breach; and (4) causation. *See Mergel v. Colgate-Palmolive-Peet Co.*, 41 N.J.Super. 372, 379 (App.Div. 1956); *Universal Underwriters Insurance Group v. Public Service Electric & Gas Co.*, 103 F.Supp.2d 744, 747-48 (2000). Defendant challenges the existence of the elements of duty, breach, and causation.

#### 1.     Damages, Causation, and Breach

Plaintiffs' Amended Complaint alleges that the NJSEA tellers suffered overuse injuries, including strains of the shoulders, neck, upper back, and upper arms, as the result of Defendant's negligent installation of the BetJet units into the teller booths. (Am. Cmplt. Count 1, ¶¶ 3-4). While Defendant does not refute the existence of these injuries, Scientific Games does argue that the injuries in question are the result of repetitive motions made by Plaintiffs over many years of employment, such that they pre-date the use of the BetJet machines and could not have been caused by the manner in which they were installed. (Def. Br. at 22). In support of this position, Defendant cites the interrogatory answers, deposition testimony, and workers' compensation medical reports of multiple Plaintiffs tending to show that their injuries were in fact pre-existing. (*Id.* at 20-24, 25-28; *see* Interrogatory Answer of Plaintiff Colleen Bartolotta stating that "30 years of repetitive motion have caused degeneration of the spine;" Deposition Testimony of Plaintiff Louis DeAngelo stating that 15 years ago he was diagnosed with tendonitis "caused by the repetitive motion" resulting from "punching out so many bets;" Deposition Testimony of Plaintiff Robert Franchetti stating that his back pain dated back "at least, maybe, 15 years."). Further, Defendant argues that deposition testimony shows the general motion used to operate the machines was the same before and after the installation of the BetJets such that the injuries could not be new. (Def. Br. at 22). Finally, Defendant cites deposition testimony tending to show that the injuries may also have been caused by the fact that the tellers had to stand on hard concrete floors for five and a half hours per day. (Def. Br. at 22-23, 30). However, Plaintiffs counter by alluding to the medical expert report provided by Dr. Wilcox, who opined that Plaintiffs' injuries likely were the result of the positioning of the BetJets within the individual workstations.[2]

---

[2] Plaintiffs make a confusing reference to the existence of an agreement with Defendant's counsel that the issue of whether or not the injuries were caused by the BetJets was not yet ripe for summary judgment and therefore Plaintiffs do not make a full argument on this point. However, Plaintiffs' reference to Dr. Wilcox's testimony is sufficient to demonstrate to the Court that, regardless of the existence of such an agreement, there are material facts

(Affidavit of Stephen B. Wilcox, Ph.D., hereinafter "Wilcox Aff.;" Expert Report prepared by Stephen B. Wilcox, Ex. Q to Affidavit of David W. Field, hereinafter "Field Aff."). There also remains the possibility that the injuries pre-dated the BetJets but were subsequently exacerbated. Given the existence of conflicting evidence and remaining issues of material facts on these points, summary judgment is inappropriate with respect to causation.

There also remain questions of material fact with respect to the issue of breach. Plaintiffs allege that Defendant breached a duty owed to Plaintiffs by installing the BetJets into the teller machines in an ergonomically unsound manner. (Pl. Opp. Br. at 10). However, the evidence put forth does not conclusively establish which party actually installed the units. Defendant argues that the units were installed by Plaintiffs' employer, the NJSEA, with some help from Defendant's technicians and provides deposition testimony to this effect. (Def. Br. at 18; Deposition Testimony of Marcello Esposito, NJSEA Assistant Vice President of Operations; Deposition Testimony of Paul DeVault, NJSEA Site Manager). However, Plaintiffs refute this and allege that at least some units were installed by Defendant directly. (Pl. Opp. Br. at 6, 10; Deposition Testimony of Marcello Esposito). Defendant argues that this does not matter because regardless of who performed the installation, the NJSEA decided where within the teller windows to hang the brackets, thus controlling the positioning of the units. (Def. Br. at 18). In sum, much of the evidence tends to suggest that the NJSEA, and not Defendant, was responsible for the installation. However, there exists at least some credible evidence suggesting that Defendant may have participated in the installation, rendering summary judgment inappropriate on the issue of breach as well.

2.   Duty

Finally, the Amended Complaint implicitly alleges that Defendant owed Plaintiffs a duty of care with respect to installing the BetJet units in an ergonomically sound manner. (Am. Cmplt. Count 1, ¶ 3). However, Defendant's motion for summary judgment argues that the entire negligent installation claim fails because Defendant did not owe Plaintiffs any duties whatsoever with respect to installing the BetJets in an ergonomically sound manner. (Def. Br. at 5). In fact, Defendant asserts that its sole obligation was to provide operable equipment. (*Id*.). Plaintiffs counter by arguing that a provision in the RFP expressing the NJSEA's concern with workplace injuries in fact does give rise to such a duty of care. (Pl. Opp. Br. at 10-11). As stated above, the provision in the RFP is as follows: "NJSEA is concerned with repetitive motion injuries, carpal tunnel syndrome and other work related injuries. All manned terminals should have adjustable keyboards, displays and have been certified by 'UL' as to the equipment's electrical and fire safety." (Haslett Aff., Ex. A at 18).

Plaintiff's reliance on this provision to impose a duty of care on Defendant is misplaced. Although the RFP was incorporated by reference into the contract such that it could conceivably create a duty, a fact which Plaintiff fails to mention, the language itself

---

in dispute on this issue and summary judgment is not appropriate.

5

is far too vague to impose the broad duty of ensuring ergonomic soundness on Defendant. While the language might give rise to a duty to provide the specific features enumerated within the paragraph, such as adjustable keyboards and displays and UL certification, there are no allegations that Defendant has not satisfied these obligations.

However, Defendant's argument that its only responsibility was to supply working BetJet units appears to be specious as well. At the outset, although neither party mentions this, the plain language of the contract between Scientific Games and the NJSEA clearly states that Defendant was responsible for installation of the units. (Haslett Aff., Ex. C at 2). Moreover, Defendant appears to be conflating the duty of care owed in the negligence context with the duties or obligations owed pursuant to a contract. Under New Jersey law, a party responsible for installing equipment typically owes a duty of care to a specific class of individuals who could potentially suffer harm if the equipment was negligently installed. *See Ridenour v. Bat Em Out*, 309 N.J.Super. 634, 642 (1998). Therefore, contrary to Defendant's contention, Scientific Games does in fact owe some duty of care to the employees of the company for which it installed the equipment. Determining the scope of this duty and whether it extends to Plaintiffs on these facts requires further analysis.

In New Jersey, the existence of a duty of care in the negligence context is a question of law that can appropriately be resolved by a court on summary judgment. *Anderson v. Redd*, 278 N.J.Super. 50, 56 (1994). Furthermore, the duty of care owed by the installer of a product is not merely co-extensive with foreseeability. *Yetter v. Rajeski*, 364 F.Supp. 105, 108 (D.N.J. 1978); *Goldberg v. Housing Auth. of Newark*, 38 N.J. 578, 583 (1962). Rather, to determine the existence of a duty, foreseeability is significant but the court must also consider additional factors such as fairness, the relationship between the parties, the nature of the risk, and the public interest in the proposed solution. *Id.; see Essex v. New Jersey Bell Telephone Co.,* 166 N.J.Super 124, 128-129 (1979)(finding that a telephone company owed a duty of care to subscriber's employees to properly install cables based upon foreseeability of injury when cables were not anchored down and typical practice of defendant to anchor down loose cables); *Ebert v. South Jersey Gas Co*., 260 N.J.Super 104, 109 (1992) (gas company whose inadequately installed system caused major explosion owed duty of care to plaintiff due to reasons of public policy and likelihood that this type of accident would recur).

Here, the Court finds that the risk of sustaining repetitive stress injuries due to the manner in which betting equipment was installed was highly unforeseeable. Moreover, given this high degree of unforeseeability, the Court finds that the situation at hand is unlikely to recur and thus the public interest in imposing this sort of duty of care on Defendant is low. Finally, because the likelihood of risk was so far attenuated, it would not be fair to impose this duty on Defendant. Therefore, the Court concludes that Scientific Games did not owe Plaintiffs a duty of care with respect to the ergonomic installation of the BetJet units. Because the existence of a duty of care is essential to a claim of negligence, Plaintiff's entire claim fails and summary judgment in favor of Defendant is appropriate. *Anderson*, 278 N.J.Super at 56; *Mergel,* 41 N.J.Super. at 379.

**III.     CONCLUSION**

For the reasons stated above, the Court finds that there are no genuinely disputed material facts with respect to the issue of duty.  As a matter of law, Plaintiffs cannot establish that Defendant owed a duty of care to install the BetJet units in an ergonomically sound manner.  Because Plaintiffs cannot satisfy the element of duty, their claim for negligent installation fails.  Therefore, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiffs' Amended Complaint is **DISMISSED** with prejudice.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**